## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

WILLIAM ARTHUR BRANSTETTER
JR.,

          **Plaintiff,**

vs.

CAROLYN W.  COLVIN,
**Acting Commissioner of Social Security,**

          **Defendant.**

Case No.  13-CV-1275-DDC

---

## MEMORANDUM OPINION AND ORDER

      This matter comes before the Court on an appeal of an unfavorable final decision of the Commissioner of Social Security on plaintiff's applications for disability insurance benefits ("DIB") under Title II and supplemental security income benefits ("SSI") under Title XVI of the Social Security Act.  42 U.S.C. §§ 401, 1381.  Plaintiff timely sought review of that decision, and it is now before the Court for briefing and decision under D. Kan. Rule 83.7(d).

### I.  Legal Standard

      The Court's jurisdiction and review are guided by 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  When reviewing the Commissioner's decision, the Court may "'neither reweigh the evidence nor substitute [its] judgment for that of the agency.'"  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).  Instead, the Court must "review the [Administrative Law Judge's ("ALJ")] decision only 'to determine whether the factual

findings are supported by substantial evidence in the record and whether the correct legal standards were applied.'" *Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003)).

"'Substantial evidence' requires 'more than a scintilla, but less than a preponderance,' and is satisfied by 'such evidence that a reasonable mind might accept to support the conclusion.'" *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989) (quoting *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987)). "[E]vidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion." *Id.* (citing *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985); *Knipe v. Heckler*, 755 F.2d 141, 145 (10th Cir. 1985)).

## II.     Five-Step Disability Determination

To qualify for DIB or SSI, "a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (citing 42 U.S.C. § 423(d)(1)(A)); *Knipe*, 755 F.2d at 145 n.8 (citations omitted)). The impairment(s) must be of "such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner evaluates disability using a five-step sequential evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003) (citing 20 C.F.R. § 404.1520 (2003) (governing claims for disability insurance benefits); § 416.920 (parallel regulation governing claims for Supplemental Security Income)); *see also Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005) (citing *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988)). If the Commissioner

can make a finding of disabled or not disabled at any step of the analysis, the evaluation will go no further. *Thomas*, 540 U.S. at 24.

> At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Id.* at 24-25. Additionally, before going from step three to step four, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is used to evaluate the claim at steps four and five. 20 C.F.R. §§ 404.1520(a)(4), (e)-(g); 416.920(a)(4), (e)-(g).

"The claimant bears the burden of establishing a prima facie case of disability at steps one through four." *Hackett*, 395 F.3d at 1171 (citing *Williams*, 844 F.2d at 751 n.2). "If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient RFC to perform work in the national economy . . . ." *Id. (*citing *Williams*, 844 F.2d at 751). The Commissioner "meets this burden if the decision is supported by substantial evidence . . . ." *Thomson*, 987 F.2d at 1487 (citations omitted).

### III.    Factual Background and Procedural History

Plaintiff was working as a truck driver on October 8, 2008, when he fell from his semi-trailer and aggravated a pre-existing lumbar degenerative disc disease.  (R. at 526-27.)  He has seen several medical professionals and received numerous treatments and prescriptions for back pain and related complications both before and after his fall.  (*See*, *e.g.*, R. at 393-418.)  Plaintiff also has sought treatment and medications for a variety of other impairments, including but not limited to arthritis, colitis, depression, enteritis, hypertension, and possible Crohn's disease.  (*See*, *e.g.*, R. at 316-17, 393-418, 440-41, 448-68, 634-41.)

Mr. Branstetter protectively filed applications for DIB and SSI on March 26, 2010, alleging disability beginning on October 8, 2008 due to back problems and colitis.  (R. at 20, 135-48, 233-43.)  The Regional Commissioner of the Social Security Administration denied plaintiff's claims initially on July 19, 2010.  (R. at 76-86.)  Plaintiff asked for reconsideration and submitted a Disability Report Appeal Form SSA-3341, adding an additional claim of arthritis in his right wrist.  (R. at 244-51.)  The Regional Commissioner denied his claims on March 29, 2011.  (R. at 88-93.)  Plaintiff requested a hearing before an ALJ on April 7, 2011. (R. at 96-97.)  Before the hearing and without adding any additional claims of impairments, plaintiff submitted new evidence and reports, including a new Disability Report Appeal Form SSA-3341 (R. at 252-59), recent medical treatment and medications forms (R. at 267-68), medical records from CRC Health Group, including a Mental Residual Functional Capacity Assessment and Physical Questionnaire signed by Barbara Spurlock, dated July 28, 2011 to August 9, 2011 (R. at 380-92), and assorted treatment records dated August 5, 2010 through September 1, 2011 (R. at 633-41).

After a video hearing, the ALJ found that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.  (R. at 17-34.)  Specifically, the ALJ made the following findings at each step of the five-step process:

- Step 1:  Plaintiff has not engaged in substantial activity since October 8, 2008, the alleged onset date.[1]  (R. at 22 (citing 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).)

- Step 2:  Plaintiff has the following severe impairments: back problems, colitis, and affective disorder.  (R. at 22 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).)

- Step 3:  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 23 (citing 20 C.F.R. §§ 404.1520(d), 414.1525, 404.1526, 416.920(d), 416.925, 41.926).)

- The ALJ then found that plaintiff has the RFC to perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).  Specifically, the ALJ found that plaintiff is limited to simple and routine light work, can perform postural activities only on occasion, and cannot work around hazards.  (R. at 24.)

- Step 4:  Plaintiff is unable to perform any past relevant work.  (R. at 27 (citing 20 C.F.R. §§ 404.1565, 416.965).)

- Step 5:  Considering plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that he can perform.  (R. at 28 (citing 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)).)

---

[1] On the claim for DIB, the ALJ found that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2013.  (R. at 22.)

Plaintiff appealed the ALJ's decision on January 26, 2012 and submitted a memorandum supporting his appeal.  (R. at 270-80.)  Plaintiff raised four basic issues in his appeal:  (1) he is unable to stoop forward; (2) the ALJ failed to consider plaintiff's severe enteritis/colitis and Crohn's disease; (3) the ALJ failed to consider plaintiff's mental impairments of listing level severity or to develop the record concerning claimant's psychiatric condition; and (4) the ALJ failed to follow the standards for evaluating plaintiff's credibility.  (*Id.*)  The Appeals Council denied plaintiff's appeal on May 16, 2013.  (R. at 1-6.)

Mr. Branstetter filed this appeal on July 16, 2013, challenging the ALJ's findings in several respects.  (Doc. 1.)  He argues:  (1) the ALJ failed to develop the record regarding plaintiff's mental impairment, resulting in error in the determination of the RFC and the findings at step five; (2) the ALJ erred by failing to assess plaintiff's limitations in stooping; (3) the ALJ failed to consider the additional impairments of enteritis, intermittent colitis, and Crohn's disease; (4) the ALJ failed to follow standards for evaluating plaintiff's credibility; (5) the ALJ failed to conduct an equivalency determination; and (6) the ALJ erred in framing certain questions to the vocational expert.  (*See* Doc. 9.)  The Commissioner, in response, argues that the ALJ's findings of fact are supported by substantial evidence in the record, the ALJ properly found that plaintiff's impairments did not meet or equal the severity of a listed impairment, and the ALJ formulated plaintiff's RFC correctly.  (*See* Doc. 14 at 2.)

**IV.    Analysis**

    **A.  Whether the ALJ failed to develop the record regarding plaintiff's mental impairment.**

<u>Step Three Analysis</u>

In his step two analysis, the ALJ identified three impairments as severe:  back problems, colitis, and affective disorder.  (R. at 22.)  At step three, the ALJ found that plaintiff lacks an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 23.)  "Plaintiff has the burden at step three of demonstrating, through medical evidence, that his impairments 'meet *all* of the specified medical criteria' contained in a particular listing."  *Riddle v. Halter*, No. 00–7043, 2001 WL 282344, at *1 (10th Cir. Mar. 22, 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).  To meet the required level of severity for listing 12.04 Affective Disorders at step three (which includes depression), plaintiff must establish that the requirements in both paragraphs A and B are satisfied, or alternatively, the requirements in paragraph C are satisfied. 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.04.  The ALJ found that plaintiff did not meet the requirements in either paragraph B or C and did not consider the criteria under paragraph A. Consequently, the ALJ found that plaintiff did not meet the required level of severity for listing 12.04 Affective Disorders at step three.

Plaintiff claims he meets seven of the nine criteria in paragraph A and all four of the criteria in paragraph B, thereby meeting the required level of severity for the listing, but he does not support his claim with any medical evidence from the record.  (Doc. 9 at 7-8.)  Plaintiff fails to meet his burden, and the Court affirms the ALJ's decision on this issue.  Because the Court is

reversing and remanding for further development of the record on plaintiff's mental impairment, the ALJ may wish to revisit his findings on the step three analysis on remand.

Residual Functional Capacity Assessment

Plaintiff argues that the ALJ failed to fully develop the record regarding his mental impairment.  "'Although a claimant has the burden of providing medical evidence proving disability, the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues.'"  *Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996) (quoting *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 479–80 (10th Cir. 1993) (internal citations omitted in original)).  "This duty exists even when the claimant is represented by counsel."  *Baca*, 5 F.3d at 480 (citing *Baker v. Bowen*, 886 F.2d 289, 292 n.1 (10th Cir. 1989)).  Although Mr. Branstetter did not mention depression in his applications for benefits, the evidence he submitted to the ALJ included multiple records citing depression and prescribing antidepressants from Dr. Basham, a physician who treated plaintiff for 19 months, as well as from other physicians contained in the record.  (*See, e.g.*, R. at 301, 342, 394-95, 404-05, 412-13, 596, 628.)  The Court can find no specific mention of these records in the ALJ's opinion; only a reference to "the limited mental health treatment" in the record.  (R. at 25.)  Although "an ALJ is not required to discuss every piece of evidence[,]" "[t]he record must demonstrate that the ALJ considered all of the evidence . . . ."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted).

The record is also devoid of a thorough assessment by any of plaintiff's healthcare providers (with the exception of Ms. Spurlock)[2] about the degree to which plaintiff's depression

---

[2] The ALJ decided with minimal discussion that Ms. Spurlock's findings about plaintiff's mental limitations were inconsistent with plaintiff's reported activities.  (R. at 26.)  The ALJ noted that the record contains no reported episodes of decompensation for extended periods, and found that plaintiff's treatment notes do not substantiate limitations as significant as those reported by Ms. Spurlock.  The record contains, however, no treatment notes from

8

would affect his ability to work.  Where there is evidence of a mental impairment, the

Commissioner of Social Security is directed to make "every reasonable effort to ensure that a

qualified psychiatrist or psychologist has completed the medical portion of the case review and

any applicable residual functional capacity assessment."  42 U.S.C. § 421(h).  Here, the ALJ

found enough evidence to label plaintiff's mental impairment as severe at step two, but the only

RFC assessment from a qualified psychiatrist or psychologist in the record noted depression but

reported insufficient evidence to otherwise assess the claimant.  (R. at 27, 356-69, 642.)

     "An ALJ must make specific RFC findings" that are "supported by substantial

evidence."  *Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007) (citing *Winfrey v.*

*Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996); *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir.

1999)).  "In assessing RFC, the Commissioner is to consider a claimant's abilities to meet the

demands of work despite her impairment(s)."  *Luzier v. Astrue*, No. 10-1186-JWL, 2011 WL

2470243, at *4 (D. Kan. June 20, 2011) (citing 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL

374184 (July 2, 1996)).  The ALJ should base this assessment "upon all relevant medical and

other evidence in the record and is to include consideration of the limitations caused by all of the

claimant's medically determinable impairments, including impairments which are not 'severe' as

defined in the regulations."  *Id.* (citing 202 C.F.R. § 404.1545(a, e); SSR 96-8p, 1996 WL

374184).  Social Security Ruling 96-8p mandates that an ALJ must "must first identify the

---

Ms. Spurlock's facility.  (R. at 26.)  Plaintiff argues that the ALJ failed to analyze Ms. Spurlock as a treating source and give her opinion controlling weight, relying instead on the State Agency reviewing psychologists to minimize plaintiff's mental impairment.  (*See* R. at 26-27, 356-69, 642; Doc. 9 at 7-10.)  As a therapist, Ms. Spurlock is not an "acceptable medical source," but an "other source" under the regulations, and thus her opinion is not entitled to controlling weight.  *See* 20 C.F.R. §§ 404.1513(d), 404.1527(c), 416.913(d), 416.927(c), SSR 06-03p, 2006 WL 2329939.  Nor is there evidence that Dr. Schultz, who also signed Ms. Spurlock's assessment, was plaintiff's treating physician.  The ALJ did not err in this respect.  But opinions from "other sources" "'are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.'"  *Fore v. Astrue*, No. 12-1048-JWL, 2013 WL 500875, at *6 (D. Kan. Feb. 11, 2013) (quoting SSR 06-03p, 2006 WL 2329939).

individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  SSR 96-8p, 1996 WL 374184, at *1; *see also Fleetwood*, 211 F. App'x at 739-40.

The limitations listed in paragraph (c) about mental abilities include "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work."  20 C.F.R. §§ 404.1545(c), 416.945(c).  The ALJ should "cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform."  *Luzier*, 2011 WL 2470243, at *4 (citing SSR 96-8p, 1996 WL 374184); *see also Fleetwood*, 211 F. App'x at 739-40.

As in *Fleetwood*, "[t]he ALJ failed to follow these requirements."  211 F. App'x at 740. The ALJ, when reaching his RFC conclusions that Mr. Branstetter can do a range of light work, and specifically in addressing how Mr. Branstetter's mental impairment would affect his work abilities, gave "little weight" to Ms. Spurlock's assessment.  He considered plaintiff's testimony about his mental limitations but found "his treatment did not substantiate limitations" and that plaintiff's statements about the limitations were "inconsistent" with the RFC assessment.  He also mentioned the Disability Determinations Services ("DDS") psychologists' July 2010 and March 2011 reviews of the record that noted depression but reported insufficient evidence to otherwise assess plaintiff.  (R. at 25-27.)  The ALJ did not discuss any other specific medical

evidence in the record that was relevant to plaintiff's mental impairment, the factors listed in 20 C.F.R. § 404.1545(c), plaintiff's "ability to perform sustained work activities[,] . . . [or] the maximum amount of work activity the plaintiff can perform."  SSR 96-8p, 1996 WL 374184, at *7.

The only record evidence the ALJ appears to have given credence was two DDS reviews, the first of which was a check-the-box evaluation form, the second a one-paragraph affirmation of the first.  "These check-the-box evaluation forms, 'standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence.'"  *Fleetwood*, 211 F. App'x at 740 (quoting *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987); SSR 96–6p, 1996 WL 374180, at *2 (July 2, 1996) (permitting ALJ to rely on opinions of medical consultants if opinions are supported by evidence in case record)).  While there are numerous physician notes that mention plaintiff's depression and/or prescribed antidepressants, the Court can find no comment from an acceptable medical source about the effect this might have on plaintiff's ability to perform work activities.  The ALJ discounted the only opinion touching on this issue – that of Ms. Spurlock – because she is an "other source."  *See* 20 C.F.R. §§ 404.1513(d), 404.1527(c), 416.913(d), 416.927(c), SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006).  "To the extent there is very little medical evidence directly addressing [Mr. Branstetter's] RFC, the ALJ made unsupported findings concerning [his] functional abilities.  Without evidence to support his findings, the ALJ was not in a position to make an RFC determination."  *Fleetwood*, 211 F. App'x at 740.

The ALJ may have been able to make proper RFC findings had he developed a sufficient record.  *Id.* (citing *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).  "The ALJ must 'make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.'"

11

*Id.* (quoting SSR 96–8p, 1996 WL 374184, at *5); *see also Jagodzinski v. Colvin*, No.  12–2509–
SAC, 2013 WL 4849101, at *5 (D. Kan. Sept.  11, 2013) ("The ALJ does not cite to any
evidence in support of his RFC finding; this is especially troubling when [the physician who
performed the state agency assessment] opined that the record was insufficient to make an RFC
finding.").  The decision in *Andrade v. Secretary of Health & Human Services* is instructive on
this score.  985 F.2d 1045, 1048 (10th Cir. 1993).  In *Andrade*, the claimant did not allege a
mental impairment in his applications for benefits, but he submitted medical records relevant to
treatment for depression before the ALJ hearing and a letter from a treating physician about his
depression during the hearing.  *Id.* at 1048.  The claimant also discontinued treatment for
depression due to financial reasons and gave testimony about the depression including suicidal
thoughts.  *Id.*  Additionally, the ALJ concluded that the depression was situational in nature.  *Id.*
The Tenth Circuit noted that there was no evidence "that a qualified psychiatrist or psychologist
assessed claimant's residual functional capacity[, nor that] the ALJ made any effort to ensure
that a qualified psychiatrist or psychologist completed the appropriate reports and residual
functional capacity assessment."  *Id.* at 1049.   Because substantial evidence did not support "the
ALJ's decision regarding the extent of claimant's mental impairment," particularly where the
ALJ failed to make "any effort to obtain the assistance of a mental health professional" to assess
the claimant's RFC, the Tenth Circuit reversed and remanded for further consideration of the
alleged mental impairment.  *Id.* at 1050, 1052 (citing 20 C.F.R. §§ 404.1520a, 416.920a).

 Here, as in *Andrade*, Mr. Branstetter did not allege a mental impairment in his
applications for disability, but his previous medical records contained evidence of a diagnosis of
and prescriptions for depression spanning several years before and after his work accident, and
he submitted additional evidence about his mental impairment before the ALJ hearing (Ms.

Spurlock's opinion). He testified about suicidal thoughts and a discontinuation of treatment due to financial reasons, and the ALJ described the depression as situational (due in large part to plaintiff's physical issues). Additionally, the only qualified psychologist to submit an RFC assessment explicitly admitted that the opinion was based on insufficient evidence. As in *Andrade*, the Court finds it prudent to reverse and remand for further development of the record on the question of plaintiff's mental impairment.

The Court is concerned that plaintiff failed to request additional record development before or during the ALJ hearing; and on appeal, plaintiff has done very little to establish what a more thorough assessment would reveal. Moreover, it appears that DDS asked plaintiff to provide further evidence, but plaintiff failed to provide any data.[3] (R. at 624.) But "[b]ecause the disability hearing is nonadversarial, an ALJ is obligated to develop the record even where, as here, the claimant is represented by counsel." *Fleetwood*, 211 F. App'x. at 741 (citing *Thompson*, 987 F.2d at 1492; *accord Hawkins v. Chater*, 113 F.3d 1162, 1164, 1168 (10th Cir. 1997)). Out of caution and for the reasons explained above, the Court concludes it should reverse and remand the case so that the ALJ can develop the record more fully on the issue of plaintiff's mental impairment. On remand, "the Commissioner must make a proper explanation such that the plaintiff and any reviewing court will know the rationale used to reach the decision, and will be able to determine whether substantial evidence in the record supports the decision." *Luzier*, 2011 WL 2470243, at *7.

---

[3] While "a claimant may be denied benefits as a sanction for the claimant's disobedience[,]" the ALJ did not cite this as a reason for denying benefits, nor does the Court find that plaintiff's behavior rose to the level warranting such a sanction. *Todd v. Colvin*, No. 13-1023-SAC, 2014 WL 943097, at *5 (D. Kan. Mar. 11, 2014) (citing *Pearce v. Sullivan*, 871 F.2d 61, 62 (7th Cir. 1989), 20 C.F.R. § 416.918(a)).

**B.  Whether the ALJ failed to address plaintiff's inability to stoop in determining the RFC.**

The ALJ found that Mr. Branstetter has the RFC to perform a range of light work, is limited to simple and routine light work, is limited to performing postural activities occasionally, and cannot work around hazards.  (R. at 23.)  With respect to stooping specifically, the ALJ mentioned several pieces of evidence:

- (1) an April 2009 opinion from Jeanette Salone, M.D., a physician who treated plaintiff for approximately four months and found plaintiff capable of light duties without restriction to stooping (R. at 595) (no weight assigned);

- (2) a March 2009 functional capacity evaluation from Becky Manson, an L.P.T.  who treated plaintiff for approximately four months and indicated claimant would never be able to stoop (R. at 556) (opinion given limited weight because notes from the treatment record suggest the claimant might be more capable than indicated during evaluations); and

- (3) a March 2011 opinion from DDS physician James Cole, M.D., who reviewed the record and determined plaintiff is limited to occasional stooping (R. at 376) (opinion found to be consistent with the RFC identified and the medical and opinion evidence on file and given significant weight).  (R. at 26-27.)

The Regulations define "light work" as:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do

14

sedentary work, unless there are additional limiting factors such as loss of fine
dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567  "[T]o perform substantially all of the exertional requirements of most

sedentary and light jobs, a person . . .  would need to stoop only occasionally (from very little

up to one-third of the time, depending on the particular job)."  SSR 83-14, 1983 WL 31254, at *2

(1983).

The ALJ concluded that plaintiff can perform postural activities occasionally.  The

Physical RFC Assessment form includes "stooping" in the section labeled "postural limitations."

(*See* R. at 375-76.)  Plaintiff argues that Dr. Salone prohibited plaintiff from stooping, but

plaintiff is mistaken.  (Doc. 9 at 13 (citing R. at 599-628).)  Dr. Salone mentioned one time in her

treatment notes that plaintiff exhibited an inability to stoop; but ultimately she decided that she

was not imposing "any restrictions as far as stooping . . . ."  (R. at 595, 605.)  The ALJ did not

assign a specific weight to Dr. Salone's opinion, but it appears that the ALJ found even more

restrictions on plaintiff's ability to stoop than did Dr. Salone.  The ALJ's opinion also aligns with

the assessment of Ms. Spurlock, a therapist who managed plaintiff's weekly course of pain

management for almost 16 months and believed plaintiff could stoop occasionally.  (R. at 391.)

And to the extent the ALJ's opinion differed from that of Ms. Manson, the ALJ gave convincing

reasons for not fully crediting Ms. Manson's assessment.  *See* SSR 06-03p, 2006 WL 2329939,

at *6.  Because Ms. Manson's treatment notes indicated that plaintiff appeared to exaggerate

during evaluations, made it a point to call attention to his trembling and shaking but would

decrease such behaviors when concentrating on an activity, and performed some activities in a

non-conventional manner, the ALJ gave Ms. Manson's opinion some, but limited weight.  (R. at

26, 556-60.)  Overall, the ALJ's opinion is supported by credible and substantial evidence in the

record.  Because "light work" can include occasional stooping, and substantial evidence in the record supports the ALJ's determination that plaintiff is able to perform occasional stooping, the Court does not find error in the ALJ's analysis or in the questions posed to the Vocational Expert with respect to stooping.  The Court affirms the ALJ's analysis on this issue.

### C. Whether the ALJ failed to consider plaintiff's severe enteritis, intermittent colitis, and Crohn's disease, and whether the ALJ failed to follow the standards for evaluating credibility.

The Court concludes that plaintiff's next two arguments about enteritis, colitis, and Crohn's disease and the credibility determination are linked and will consider them together. "An ALJ's credibility determinations are generally treated as binding on review." *Elliott v. Astrue*, 507 F. Supp. 2d 1188, 1195 (D. Kan. 2007) (citing *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990)).  The ALJ is in the best position to "'observe and assess witness credibility[,]'" and so the Court normally defers to the ALJ's credibility determination. *Id.* (quoting *Casias*, 933 F.2d at 801).  The ALJ's findings about "'credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).

Plaintiff asserts that the record is "nearly silent" on the ALJ's credibility determination. The Court agrees that the ALJ did not clearly and succinctly itemize the reasoning for his credibility determination.  The ALJ reported that, in general, he concluded that "the claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the medical history, the reports of treating and examining practitioners, the degree of medical treatment required, and the claimant's own description of his activities and lifestyle." (R. at 25.)  While the ALJ did not clearly define the reasoning for his credibility determination, the Court has sussed out three factors that appeared to drive the ALJ's credibility

16

decision:  1) the limitations plaintiff alleges about his back pain are not supported by the objective findings or non-invasive treatment suggested by a neurosurgeon; 2) plaintiff's testimony is not consistent with his reported daily activities; and 3) the limited treatment history, including the fact that plaintiff is not taking any prescribed medications for his depression or bowel problems, which is "secondary to financial reasons," does not support plaintiff's allegations.

The Court concludes that the ALJ sufficiently explained his reasoning, and the Court affirms the ALJ's credibility findings, on the first two issues.  On the third factor, the limited treatment history, it appears that the ALJ found plaintiff's statements about his impairments and their effect on his ability to work were not credible because, in part, plaintiff failed to pursue medical treatment.  "[T]he 10th Circuit, relying on the case of *Thompson v. Sullivan*, 987 F.2d 1482, 1489-90 (10th Cir. 1993), has repeatedly held that the inability to pay may justify a claimant's failure to pursue or seek treatment."  *Williams v. Astrue*, No. 09-1341-SAC, 2010 WL 4291918, at *6 (D. Kan. Oct. 26, 2010) (citing *Threet v. Barnhart*, 353 F.3d 1185, 1190 n.7 (10th Cir. 2003); *Norris v. Apfel*, No. 99-6167, 2000 WL 504882, at *8 (10th Cir. Apr. 28, 2000); *Smith v. Apfel*, No. 97-5173, 1998 WL 321176, at *4 (10th Cir. June 8, 1998); *Snead v. Callahan*, No. 96-5216, 1997 WL 687660, at *4 (10th Cir. Oct. 31, 1997); *see also Eason v. Chater*, 951 F. Supp. 1556, 1562 (D.N.M. 1996) (claimant should not be penalized for failing to seek treatment that he cannot afford); *Hockenhull v. Bowen*, 723 F. Supp. 555, 557 (D. Colo. 1989) (evidence of nontreatment is of little weight when claimant's failure to seek medical treatment can be attributed to his inability to pay for treatment)).

The ALJ made no specific findings about plaintiff's inability to pursue medical treatment, merely mentioning that plaintiff is "unable to treat for his depression" and that there is very

limited treatment record for colitis and depression "secondary to financial reasons."  (R. at 25.)
The record reflects that medical providers repeatedly prescribed prescription medication for
plaintiff's depression, and plaintiff testified at the hearing that he could not afford the cost of the
medication.  (R. at 50-51.)  The Court concludes that the ALJ's note about plaintiff's inability to
treat for depression "reveals the ALJ's determination that plaintiff refused prescribed treatment,
and his awareness that plaintiff alleged [he] was unable to afford the treatment."  *King v. Colvin*,
No.  12-1116-JWL, 2013 WL 1624826, at *4 (D. Kan. Apr. 15, 2013).  Such a finding requires
the ALJ to consider the four-part test developed in *Frey v. Bowen*:  "'(1) whether the treatment at
issue would restore claimant's ability to work; (2) whether the treatment was prescribed;
(3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable
excuse.'"  *Thompson*, 987 F.2d at 1490 (quoting *Frey*, 816 F.2d at 517) (quoted in *King*, 2013
WL 1624826, at *4).  On remand, the ALJ must apply the *Frey* test "before he may use
Plaintiff's refusal to follow prescribed treatment to support his finding of incredibility."  *King*,
2013 WL 1624826, at *5.

The Court has examined several other medical records that the ALJ did not mention in
his discussion of plaintiff's bowel problems.  They include:  a May 2009 note from Dr. Basham
showing that a medical provider saw plaintiff and prescribed medication (Asacol) to treat his
colitis (R. at 394-95); a discharge summary by Donald Seery, M.D. after plaintiff's June 2009
hospital admission for colitis, where Dr. Seery noted that plaintiff did not fill the earlier Asacol
prescription due to inability to pay (R. at 339-40); and a note from a lab test with Tiruvadi
Ravigururajan, M.D., who mentioned that plaintiff had a GI referral for colitis that was canceled
in September 2011 because plaintiff's insurance was canceled.  (R. at 640.)  The ALJ apparently
relied on the "very limited treatment record" to discount plaintiff's mental health and bowel

18

problems without further inquiry into plaintiff's ability to pay for treatment.  When Mr.

Branstetter testified about his inability to pay for medical treatment, "[t]his triggered a duty on

the part of the ALJ to determine whether financial reasons in fact explained [plaintiff's] failure to

seek treatment, a duty the ALJ failed to discharge properly."  *Lee v. Barnhart*, 117 F. App'x 674,

679 (10th Cir. 2004).

Plaintiff testified, and the record supports his testimony, that he was unable to receive

treatment for his depression, colitis, and other GI problems for financial reasons.[4]  (*See* R. at 50-

51, 56-57, 339-40, 640.)  *See also Norris*, 2000 WL 504882, at *8.  The Court does not affirm

the ALJ's findings that plaintiff's limited health treatment affects plaintiff's credibility.  On

remand, the ALJ should make more specific findings about how plaintiff's limited health

treatment is weighed in the credibility determination.  Also, the ALJ should affirmatively link all

of his credibility determinations to specific record evidence in order to facilitate later review,

including consideration of the *Frey* test as appropriate.  *See Elliott*, 507 F. Supp. 2d at 1195

(citation omitted).

**D.  Whether the ALJ failed to conduct an equivalency determination.**

Plaintiff asserts that the ALJ based his equivalency determination upon an erroneous

interpretation of Social Security Ruling 96-6p.  The ALJ wrote, "[i]n order for an impairment to

equal a listing[,] the opinion of a medical expert or other 'medical or psychological consultant

designated by the Commissioner' *is required* for a finding that an impairment, or combination of

impairments, equals a listing."  (R. at 24 (citing SSR 96–6p, 1996 WL 374180) (emphasis

---

[4] Since his accident in 2008, plaintiff has remained unemployed.  He is on food stamps and has no other income (R. at 146); he has no health insurance and owes approximately $60,000 in hospital bills (R. at 56-57; *see also* 640); and while the record establishes that he received a $70,000 settlement from his worker's compensation claim in 2010, he has no bank account.   (R. at 138, 150.)

added).)  The ALJ concluded, plaintiff argues, that for an impairment to equal a listing, an

opinion of a medical expert must *so find*.  (Doc. 9 at 18-19.)  Any such statement is incorrect:

Social Security Ruling 96-6p directs that the ALJ "must *consider and evaluate* any assessment of

the individual's RFC by a State agency medical or psychological consultant and by other

program physicians or psychologists."  SSR 96–6p, 1996 WL 374180, at *4 (emphasis added).

But while the ALJ's statement is not entirely clear, the Court does not read the ALJ's assertion as

plaintiff does.  Instead, it appears that the ALJ was stating that he *must consider* the opinion of

an appropriate medical expert, not that he may find that an impairment equals a listing only if a

medical expert finds that it does.  "[T]he Commissioner's longstanding policy requires that an

ALJ *must consider* the judgment regarding equivalence of a physician or psychologist designated

by the Commissioner before the ALJ may make a finding of medical equivalence."  *Shook v.

Barnhart*, No. 05-4107-JAR, 2006 WL 4080050, at *6 (D. Kan. Aug.  21, 2006) (citing SSR 96–

6p, 1996 WL 374180).  Because the Court finds that the ALJ correctly applied the

Commissioner's policy, the Court affirms his decision on this issue.  On remand, the Court

encourages the ALJ to reword this sentence so that no one can doubt its meaning.

### E.  Whether the ALJ failed to list mental health limitations in both hypothetical questions posed to the vocational expert.

Plaintiff argues that the ALJ posed deficient hypothetical questions to the vocational

expert because he did not include any information about the mental impairment.  Because the

Court is remanding this case for further proceedings that may affect the ALJ's hypothetical

questions, the Court "need not consider this issue further except to state that if the ALJ modifies

his RFC evaluation on remand after" further development of the record and reconsideration of

credibility in light of plaintiff's financial issues, the ALJ "should of course also obtain further

testimony from a vocational expert to meet the Commissioner's burden at step five of the sequential analysis."[5] *Large v. Apfel*, No. 98-5174, 1999 WL 651390, at *3 (10th Cir. Aug. 26, 1999).

## V.      Conclusion

For the above stated reasons, the decision of the Commissioner is reversed and remanded consistent with this opinion, including for further development of the record and for more specific findings with respect to how plaintiff's limited health treatment is weighed in the credibility determination.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the Commissioner's decision denying plaintiff disability benefits and supplemental security income is **REVERSED** and **REMANDED** to the agency for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

**Dated this 25th day of July, 2014, at Topeka, Kansas.**


**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**

---

[5] The ALJ also may wish to consider reviewing the hypothetical questions to include information about plaintiff's bowel problems, if warranted, after further development of the record and reconsideration of credibility.